# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## 3:17-cv-202-RJC
## (3:12-cr-215-RJC-1)

| | |
|---|---|
| SEAN F. MESCALL, | ) |
| | ) |
|         **Petitioner,** | ) |
| | ) |
| **vs.** | )         **ORDER** |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|         **Respondent.** | ) |
| _____ | ) |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), and Motion to Order Government to Respond, (Doc. No. 2). The § 2255 Motion to Vacate will be denied and the Motion to Order the Government to Respond will be denied.[1]

## I.      BACKGROUND[2]

On September 9, 2009, the Commodities Futures Trading Commission brought a civil action against Petitioner, charging him with operating the Ponzi scheme. On September 16, 2009, the Court issued a preliminary injunction forbidding the movement of assets, appointing a receiver, and requiring Petitioner to cooperate fully with the receiver. Petitioner violated the preliminary injunction, and the Court found him in contempt. The Court stayed imposition of civil contempt sanctions and referred the matter to the U.S. Attorney for possible criminal contempt proceedings.

---

[1] Petitioner filed a petition for writ of mandamus with regards to this Action in the Fourth Circuit Court of Appeals on October 30, 2017, which is pending in Fourth Circuit case number 17-2285.

[2] This section is gleaned in part from the summary contained in the Fourth Circuit Court of Appeals' decision in United States v. Mescall, 624 Fed. Appx. 103, 103 (4th Cir. 2015).

Petitioner was charged with and convicted of criminal contempt, in violation of 18 U.S.C. § 401(3) (2012), case number **3:10-cr-121**. He pled guilty and, in a judgment dated May 18, 2011, he was sentenced to 27 months' imprisonment followed by three years of supervised release. (Case No. 3:10-cr-121, Doc. Nos. 10, 15). He did not appeal or seek post-conviction relief in that case.

On November 22, 2011, the Government charged Petitioner with a single count of wire fraud by Bill of Information[3] in criminal case number **3:11-cr-379**. The wire fraud was alleged to have occurred from 2006 through September, 2010, via an email transmitted on or about October 31, 2008, from Petitioner to victim "MB." (Case No. 3:11-cr-379, Doc. No. 1). Petitioner signed a plea agreement on November 17, 2011, but did not go forward with a Rule 11 hearing. (Id., Doc. No. 3); see (Case No. 3:12-cr-215, Doc. No. 64 at 13-14). It became apparent by early 2012 that Petitioner had changed his position of cooperation and began contesting the wire fraud charge. See (Case No. 3:11-cr-379, Doc. No. 5) (letter from Petitioner notifying the Court that counsel was refusing to raise a double jeopardy issue that Petitioner believed to be meritorious). On January 8, 2015, the Government dismissed the case without prejudice. (Id., Doc. Nos. 8, 9).

After Petitioner failed to plead guilty in case number 3:11-cr-379, the Government brought charges before the Grand Jury in case number **3:12-cr-215**. The Indictment filed on June 20, 2012, charged Petitioner with: (1) securities fraud from in or about 2006 through in or about 2010; (2) wire fraud from in or about 2006 through in or about 2010 involving an email transmitted on or about October 3, 2007, to victim "DR;" and (3) money laundering on or about November 27, 2009.

---

[3] Petitioner apparently waived the right to have the felony wire fraud charge brought before a grand jury and was therefore charged by Bill of Information rather than an indictment. See U.S. Const. Amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."); Stirone v. United States, 361 U.S. 212, 215-16 (1960) (the right to have a case presented to a grand jury prior to being tried or convicted of a felony is inviolable unless it is waived by the accused); Fed. R. Cr. P. 7(b) ("An offense punishable by imprisonment for more than one year may be prosecuted by information if the defendant – in open court and after being advised of the nature of the charge and of the defendant's rights – waives prosecution by indictment.").

(Case No. 3:12-cr-215, Doc. No. 1). Petitioner was arrested on June 22, 2012, and his initial appearance with counsel occurred that same day. On July 18, 2012, Petitioner's counsel, Assistant Public Defender Peter Adolf, moved to continue the trial date because the case was not ready for trial pursuant to 18 U.S.C. § 3161(c)(2). (Id., Doc. Nos. 6). The Court granted the continuance in a written Order finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial. (Id., Doc. Nos. 6, 7).

On August 25, 2012, Petitioner filed a *pro se* Motion to excuse appointed counsel and represent himself at trial. (Id., Doc. No. 9). At a hearing before Magistrate Judge Keesler, Petitioner explained that he wanted to pursue a double jeopardy argument with regards to his contempt case. See (Id., Doc. No. 64 at 9). Judge Keesler granted Petitioner's motion to excuse counsel and represent himself after conducting a thorough colloquy about the consequences of proceeding *pro se*, including the difficulty of conducting discovery while incarcerated and negotiating a plea on his own behalf. The prosecutor noted that the parties had discussed asking to reset the upcoming trial in light of the voluminous discovery and complexity of the case. (Id., Doc. No. 64 at 3). Petitioner requested that the Court reset the October 1 trial date "until springtime like [the prosecutor] was talking about earlier." (Id., Doc. No. 64 at 19). Judge Keesler appointed Mr. Adolf to serve as standby counsel with Petitioner's consent. (Id., Doc. No. 64 at 23).

On September 17, 2012, Petitioner filed a *pro se* "Unopposed Motion for Status Conference" in which he requested a continuance of the trial date, which the Court granted in a written Order again making findings that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial. (Id., Doc. Nos. 13, 14).

On October 9, 2012, Petitioner filed a *pro se* pleading arguing that the Fifth and Sixth Amendments require dismissal of the charges in case number 3:12-cr-215, because Petitioner was already convicted of criminal contempt for the same conduct in case number 3:10-cr-121. (Id., Doc. No. 15); see (Id., Doc. No. 20). The Court denied Petitioner's motion, finding that his prosecution for securities fraud, wire fraud, and money laundering was not barred by his earlier criminal contempt conviction. United States v. Mescall, 2012 WL 12829999 (W.D.N.C. Dec. 4, 2012).

The case proceeded to a jury trial in December 2012, at which Petitioner represented himself, and resulted in guilty verdicts on all three counts. (Case No. 3:12-cr-215, Doc. No. 33).

The Presentence Investigation Report ("PSR") scored the base offense level as 31 because the offense involved money laundering, and the most serious underlying offenses had an offense level of 31.[4] (Id., Doc. No. 46 at ¶ 21). Two levels were added because Petitioner was convicted of violating 18 U.S.C. § 1956, and two more levels were added for sophisticated means. (Id., Doc. No. 46 at ¶¶ 22, 23). Two levels were added for obstruction of justice, resulting in a total offense level of 37. (Id., Doc. No. 46 at ¶¶ 26, 30). Petitioner had two criminal history points and a criminal history score of two, and two points were added because Petitioner committed the instant offense while under a sentence for driving while intoxicated, resulting in a total criminal history score of four and a criminal history category of III. (Id., Doc. No. 46 at ¶¶ 38-40). The resulting guidelines imprisonment range was 262-327 months. (Id., Doc. No. 46 at ¶ 59).

---

[4] The underlying offenses of securities fraud and wire fraud both had base offense levels of seven, plus a 16-level enhancement for loss of more than $1,000,000 but less than $2,500,000, a four-level enhancement for more than 50 victims, and a four-level enhancement for having derived more than $1,000,000 in gross receipts from one or more financial institutions, for a total offense level of 31. (Id., Doc. No. 46 at ¶ 21).

When the matter came before the Court for sentencing, Petitioner requested counsel's assistance. The Court reset sentencing to give Mr. Adolf time to file written objections. Counsel argued that: the four-level enhancement for gross receipts over $1,000,000 does not apply because the funds came from individuals, and not from the financial institutions themselves; the sophisticated means enhancement does not apply; Petitioner should receive a reduction for acceptance of responsibility because he only went to trial to preserve his double jeopardy objection; the enhancement for obstruction of justice is double-counting due to his contempt conviction in case number 3:10-cr-121; and the criminal history score over-represents the seriousness of his criminal record. (Id., Doc. No. 48).

When sentencing again came before the Court on October 30, 2014, Petitioner stated that he had read the PSR and discussed it with counsel. (Id., Doc. No. 70 at 1). The Court sustained counsel's objections with regards to acceptance of responsibility and granted a two-level reduction, and overruled the other objections. (Id., Doc. No. 70 at 17). The adjusted offense level was 35 and the criminal history category remained III, resulting in a corrected guideline range of 210-262 months' imprisonment. (Id., Doc. No. 70 at 21).

Defense counsel argued that the criminal history category overrepresented Petitioner's prior record, that Petitioner immediately told counsel it was a Ponzi scheme, and that Petitioner would not have gone to trial but for the double jeopardy issue. (Id., Doc. No. 70 at 29). Counsel noted the case's unusual procedural history, stating that, "when Mr. Mescall first came in, whenever it was four years ago or so, he was charged with contempt, and in state court they were prosecuting the underlying fraud. There were decisions why the government did that. But at some point while he was serving the sentence for the contempt, the government changed its mind and they're entitled to do that." (Id., Doc. No. 70 at 29-30). If Petitioner had pled guilty, he would have

been looking at considerably less time – perhaps three levels lower with a range of 151 to 188 months' imprisonment. Taken along with Petitioner's overrepresented criminal history, counsel argued, a 10-year sentence would be appropriate. The Government requested a guideline sentence. (Id., Doc. No. 70 at 34).

The Court agreed with defense counsel that a criminal history category of III overrepresented Petitioner's prior record and instead relied on a criminal history category of II. In addition, the Court granted Petitioner credit for the 27-month sentence he had served for the contempt conviction in case number 3:10-cr-121 because it was part of the relevant conduct in the instant criminal case. (Id., Doc. No. 70 at 38). The Court therefore imposed a sentence of 168 months as to each count (195 months minus 27), concurrent, followed by three years of supervised release and $1,248,812.90 in restitution. (Id., Doc. No. 70 at 41-42); (Id., Doc. No. 55).

Petitioner argued on direct appeal, through new appointed counsel, that the convictions were for the same conduct as the criminal contempt conviction and thus obtained in violation of double jeopardy. The Fourth Circuit affirmed, concluding:

> [A]pplication of the Blockburger [v. United States, 284 U.S. 299, 304 (1932),] test compels the conclusion that there was no double jeopardy violation. Criminal contempt has as an element the willful violation of a court order, … while the other offenses do not. Additionally, wire fraud contains an element – use of a wire communication … – that criminal contempt does not; securities fraud contains an element – engaging in fraud in connection with the purchase or sale of a security … – that criminal contempt does not; and money laundering contains an element – a financial transaction designed to conceal proceeds of an unlawful activity … – that criminal contempt does not.

United States v. Mescall, 624 Fed. Appx. 103, 104 (4th Cir. 2015).

The United States Supreme Court denied certiorari on June 13, 2016. Mescall v. United States, 136 S.Ct. 2475 (2016).

Petitioner filed the instant § 2255 Motion to Vacate on April 10, 2017. Construing the *pro se* pleadings liberally, he appears to argue (renumbered): (1) the Court erred by: (A) convicting and sentencing him in violation of double jeopardy; and (B) convicting and sentencing him in violation of his right to a speedy trial; (2) trial counsel was ineffective for: (A) failing to raise the double jeopardy issue; (B) failing to raise the speedy trial issue; and (C) misadvising him about the effect of the criminal contempt plea and failing to negotiate a plea encompassing the criminal attempt as well as the three substantive charges; and (3) appellate counsel was ineffective for failing to raise the speedy trial violation on direct appeal. He acknowledges that his speedy trial claim is procedurally defaulted because it was not raised on direct appeal, however, he argues that the default is excused by the ineffective assistance of "pre-trial counsel." See (Doc. No. 1 at 9). He also acknowledges that the Fourth Circuit rejected his double jeopardy claim on direct appeal, but argues that its decision is not binding because the Fourth Circuit did not "fully" consider his double jeopardy argument and the controlling case law and therefore rendered an erroneous ruling that, if applied in these proceedings, would result in manifest injustice. (Doc. No. 1 at 17). He requests an evidentiary hearing. (Doc. No. 1 at 12).

## II.     MOTION FOR GOVERNMENT RESPONSE

Petitioner has filed a *pro se* letter that is construed as a Motion to Order the Government to Respond to the § 2255 Motion to Vacate. (Doc. No. 2). The Court concludes that Petitioner's claims can be resolved on the face of the record without requiring the Government to respond. See Rules 4(b), 5(a), Rules Governing Section 2255 Proceedings for the United States District Courts. Therefore, Petitioner's Motion is denied.

## III.    SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong

inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under … Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), *vacated on other grounds*, 218 F.3d 310 (4th Cir. 2000).

The Sixth Amendment right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). As a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. Frye, 566 U.S. at 145. To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel, as well as a reasonable

probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it. Id. at 147. It is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. Id.

Strickland also applies in the context of appellate representation. To show prejudice in such cases, a petitioner must show a "reasonable probability ... he would have prevailed on his appeal" but for his counsel's unreasonable failure to raise an issue. Smith v. Robbins, 528 U.S. 259, 285–86 (2000); see also United States v. Mannino, 212 F.3d 835, 845–46 (3d Cir. 2000) ("The test for prejudice under Strickland is not whether petitioners would likely prevail upon remand, but whether we would have likely reversed and ordered a remand had the issue been raised on direct appeal.").

## IV. PROCEDURAL DEFAULT

"Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (internal citations omitted); United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, a petitioner must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. See United States v. Frady, 456 U.S. 152, 167-68 (1982); United States v. Mikalajunas, 186 F.3d 490, 492–93 (4th Cir. 1999); United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994). Actual prejudice is shown by demonstrating that the error worked to petitioner's "actual and substantial disadvantage," rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494

(1986)). To establish cause based upon ineffective assistance of counsel, a petitioner must show that the attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Murray, 477 U.S. at 488; Strickland, 466 U.S. at 687. In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a petitioner must show actual innocence by clear and convincing evidence. See Murray, 477 U.S. at 496.

## V. DISCUSSION

### (1) Trial Court Error

#### (A) Double Jeopardy

Petitioner argues that the Court erred by convicting and sentencing him for securities fraud, wire fraud, and money laundering in case number 3:12-cr-215 because he was previously convicted for criminal contempt with regards to the same conduct in case number 3:10-cr-121. Although counsel raised this issue on appeal, he argues that the Fourth Circuit's rejection of the claim should not preclude him raising it here because the Fourth Circuit ignored Supreme Court precedent addressing the exact circumstances of Petitioner's case, United States v. Dixon, 509 U.S. 688 (1993). Because the claim was not "fully considered" by the Fourth Circuit, and its decision was erroneous, he argues, it would be manifestly unjust to apply the Fourth Circuit's decision as law of the case in the instant proceeding. (Doc. No. 1 at 17).

It is well settled that a criminal defendant cannot "circumvent a proper ruling ... on direct appeal by re-raising the same challenge in a § 2255 motion." United States v. Dyess, 730 F.3d 354, 360 (4th Cir. 2013) (quoting United States v. Linder, 552 F.3d 391, 396 (4th Cir. 2009)); see also United States v. Roane, 378 F.3d 382, 396 n. 7 (4th Cir. 2004) (noting that, absent "any change in the law," defendants "cannot relitigate" previously decided issues in a § 2255 motion);

Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (holding that a criminal defendant cannot "recast, under the guise of collateral attack, questions fully considered by this court [on direct appeal]").

Under the law of the case doctrine, once the decision of an appellate court establishes law of the case, it must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal unless: "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work a manifest injustice." United States v. Aramony, 166 F.3d 655, 661 (4th Cir. 1999) (quoting Sejman v. Warner-Lambert Co., 845 F.2d 66, 69 (4th Cir. 1988)); see United States v. Francis, 62 Fed. Appx. 507 (4th Cir. 2003) (applying law of the case doctrine to bar the re-litigation on § 2255 review of issues previously litigated on direct appeal).[5]

Petitioner's allegation that the Fourth Circuit's decision was clearly erroneous because it ignored binding precedent is incorrect. The Fourth Circuit rejected Petitioner's double jeopardy argument because his 2010 contempt conviction and the 2012 charges of securities fraud, wire fraud, and money laundering pass the "same-elements" test set forth in Blockburger v. United States, 284 U.S. 299, 304 (1932), because each offense contains an element that the others do not. The case Petitioner cites for support, Dixon, does not undermine that conclusion. In Dixon, the United States Supreme Court addressed whether prosecution for criminal contempt based on violation of a criminal law incorporated into a court order bars subsequent prosecution for the

---

[5] Unpublished opinions are not ordinarily accorded precedential value, and are "entitled only to the weight they generate by the persuasiveness of their reasoning." Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (citation omitted)).

criminal offense. It concluded that the appropriate test is <u>Blockburger's</u> same-elements test, which the Fourth Circuit applied in denying Petitioner's claim on direct appeal.

There has been no change of circumstances that would warrant re-litigating Petitioner's double jeopardy claim, and therefore, it is dismissed.

(B)     <u>Speedy Trial</u>

Liberally construing Petitioner's arguments, he appears to argue that his conviction was obtained in violation of the Speedy Trial Act, his Sixth Amendment right to a speedy trial, and his Fifth Amendment due process right. After obtaining a criminal contempt conviction based on Petitioner's continuing acts of wire, fraud, securities fraud and money laundering, the Government charged him again for wire fraud and, implicitly, for securities fraud and money laundering. It dropped the charges two years later and indicted him again for the same charges.[6] The Government knew of Petitioner's substantive conduct no later than June 5, 2010, and could have charged it at the same time as it filed the contempt charge in case number 3:10-cr-121. (Doc. No. 1 at 33). Petitioner went to trial in the instant case more than two years later in December, 2012. The significant pre-indictment delay, especially after dropping the other Indictment, violated the Fifth and Sixth Amendments. The Court could have sanctioned the Government for its delay pursuant to 18 USC 3162(b)(4).

---

[6] Petitioner's suggestion that case number 3:11-cr-379 charged securities fraud, wire fraud, and money laundering, is incorrect. He was charged with a single count of wire fraud by Bill of Information after having apparently waived indictment. <u>See</u> <u>Stirone</u>, 361 U.S. at 215-16 (the right to have a case presented to a grand jury prior to being tried or convicted of a felony is inviolable unless it is waived by the accused); Fed. R. Cr. P. 7(b) (addressing indictment waiver). When Plaintiff's guilty plea failed to materialize in the 2011 case, however, the Government brought charges of securities fraud, wire fraud, and money laundering before the Grand Jury. As a result Plaintiff was indicted in a new criminal case, number 3:12-cr-215, which is the subject of the instant § 2255 proceeding.

Petitioner concedes that this claim is procedurally defaulted because he did not raise it on direct appeal, however, he argues that ineffective assistance of counsel excuses his procedural default of this claim. (Doc. No. 1 at 16-18).

Petitioner cannot demonstrate cause and prejudice via ineffective assistance of counsel because Petitioner chose to represent himself at trial.[7] See generally Cook v. Ryan, 688 F.3d 598 (9th Cir. 2012) (in § 2254 context, holding that defendant who chose to represent himself at trial could not rely on ineffective assistance of counsel to demonstrate cause to excuse his procedural default of a post-conviction claim). Petitioner does not appear to assert actual innocence and no such showing is supported by the record. Therefore his procedural default of the speedy trial claim is unexcused. Alternatively, this claim fails on the merits for the reasons that follow.

    (i)      Speedy Trial Act

Under the Speedy Trial Act, an indictment must be filed within 30 days from the date on which a defendant is arrested, 18 U.S.C. § 3161(b), and the trial must commence within 70 days of the filing date of the indictment or the date of a defendant's initial appearance, whichever is later. 18 U.S.C. § 3161(c)(1). Certain delays are excludable when computing the time within which a defendant must be indicted or his trial must commence. 18 U.S.C. § 3161(h)(1)-(9). For instance, if an information or indictment is dismissed by the government and a charge is filed thereafter against the defendant for the same offense, or any offense required to be joined with that offense, "any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge had there been no previous charge." 18 U.S.C. § 3161(h)(5). Further, any period of delay resulting from a continuance granted by a judge *sua sponte,* at the request of the defendant or his counsel, or at the request of the prosecutor, is excluded

---

[7] Petitioner's waiver of his claims of ineffective assistance of counsel is addressed in Section (2), *infra*.

if the court sets forth in writing its finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial. 18 U.S.C. § 3161(h)(7)(A). Delays attributable to pretrial motions are also excluded from the computation. 18 U.S.C.A. § 3161(h)(1)(D). A defendant's failure to make a timely motion to dismiss waives his rights under the Speedy Trial Act. 18 U.S.C. § 3162(a)(2).

First, Petitioner's allegation of unreasonable pre-indictment delay is meritless. Petitioner was arrested on June 22, 2012, two days after the Indictment was issued. Thus, no violation of the 30-day period occurred. See 18 U.S.C. § 3161(b).

Second, to the extent Petitioner alleges he was not brought to trial within the 70-day period, this too is meritless. The initial appearance occurred on June 22, 2012. Counsel moved to continue the trial date 26 days later on July 18, 2012. (Case No. 3:12-cr-215, Doc. No. 6). The Court granted the continuance and reset trial for October 1, 2012. (Id., Doc. No. 7). Petitioner filed a *pro se* Motion to continue the trial for a second time, which was granted until December 3, 2012. (Id., Doc. No. 13, 14). The Court made written findings in both Orders that the ends of justice by taking such action outweighed the interests of the public and Petitioner to a speedy trial as set forth in § 3161(h)(7)(A). (Id., Doc. Nos. 7, 14). Trial commenced December 4, 2012. Because the trial delays were due to defense continuances that were in the interest of justice, no speedy trial violation occurred.

Therefore, Petitioner's argument that either pre-or post-indictment delay violated the Speedy Trial Act is rejected.

(ii)     Sixth Amendment

The Sixth Amendment guarantees that an "accused shall enjoy the right to a speedy and public trial." U.S. Const. Amend. VI. By definition, the constitutional right to a speedy trial is

triggered by an indictment; it does not protect a defendant from a pre-indictment delay. United States v. Hall, 551 F.3d 257, 271 (4th Cir. 2009); see United States v. MacDonald, 456 U.S. 1, 8 (1982) ("The Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations.").

In determining whether a pre-trial delay violated a defendant's Sixth Amendment right, a court must balance the following four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the extent of prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 530 (1972). The first factor involves two inquiries: (i) whether the delay is sufficient to trigger a speedy trial inquiry; and (ii) whether, together with other relevant factors, "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." Doggett v. United States, 505 U.S. 647, 651–52 (1992). To prevail on a speedy trial claim, defendants are obliged to establish "that on balance, [the] four separate factors weigh in his favor." United States v. Thomas, 55 F.3d 144, 148 (4th Cir. 1995); see Barker, 407 U.S. at 530. "[I]f delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine…." Vermont v. Brillon, 556 U.S. 81, 90 (2009) (quoting Barker, 407 U.S. at 529). Delay caused by defendant's counsel when acting in furtherance of the litigation is also charged against the defendant pursuant to agency principles. Coleman v. Thompson, 501 U.S. 722, 753 (1991). "[T]he Speedy Trial Clause has no application after the Government, acting in good faith, formally drops charges." MacDonald, 456 U.S. at 7.

Petitioner was indicted on June 20, 2012, and he was tried less than six months later in early December, 2012. This delay was not unreasonable in light of the case's complexity and voluminous discovery. See generally Doggett, 505 U.S. at 651-52 & n. 1 (noting that a delay is

unreasonable enough to trigger a <u>Barker</u> inquiry when it approaches one year). The record reflects that the delay was due to defense continuances because the case was not ready for trial. <u>See</u> (Case No. 3:12-cr-215, Doc. Nos. 6, 13, 64 at 19). Petitioner never moved for a speedy trial and he does not allege that the delay prejudiced him by, for instance, identifying witness testimony or evidence that was diminished or no longer available. <u>See</u>, <u>e.g.</u>, <u>United States v. Andrews</u>, 365 Fed. Appx. 480 (4th Cir. 2010) (650-day delay did not violate the Sixth Amendment where defendant requested the majority of the continuances to allow counsel adequate time to prepare for trial and defendant did not oppose the two government continuances, there was no evidence of prosecutorial misconduct or bad intent, defendant did not assert the right to a speedy trial in the district court, and he made no showing of prejudice by identifying a specific witness who was unavailable to testify or could not accurately recall the events in question, or that exculpatory evidence was lost or rendered unavailable due to the delay).

Petitioner has failed to demonstrate the existence of any <u>Barker</u> factors and no Sixth Amendment violation occurred under these circumstances.

(iii)    <u>Fifth Amendment</u>

In order to prevail on a due process claim based on pre-indictment delay, a defendant first must show that he suffered actual prejudice. <u>United States v. Uribe-Rios</u>, 558 F.3d 347, 358 (4th Cir. 2009). Actual prejudice means "actual substantial prejudice," which is a "heavy burden." <u>United States v. Lopez</u>, 860 F.3d 201, 213 (4th Cir. 2017) (quoting <u>Jones v. Angelone</u>, 94 F.3d 900, 907 (4th Cir. 1996)). As long as the indictment is brought within the statute of limitations, prejudice is not presumed to have resulted from the delay between commission of the offense and arrest or indictment. <u>Jones</u>, 94 F.3d at 907. If the threshold prejudice requirement is met, then the court then considers the government's reasons for the delay to evaluate whether there has been a violation of

"fundamental conceptions of justice or the community's sense of fair play and decency." Id. (internal quotation marks omitted); see Howell v. Barker, 904 F.2d 889, 895 (4th Cir. 1990).

Petitioner contends that the Government should not have delayed between June 5, 2010, when it discovered the offenses, and June, 20, 2012, when it indicted him. Petitioner fails to explain how the pre-indictment delay actually prejudiced him. For instance, he does not allege that any witnesses became unavailable or that their memories deteriorated, or that any evidence was misplaced, during the delay. See Lopez, 860 F.3d at 213 (affirming the denial of defendant's due process claim that a six-year gap between the offense and indictment where the defendant failed to identify any specific witness testimony or evidence that was lost to him as a result of the passage of time and, alternatively, the reason for delay was continued reasonable investigation rather than government misconduct). Prejudice is not presumed because the Indictment was filed within the statute of limitations for each offense.[8] Because Petitioner has failed to demonstrate actual prejudice, the Court need not examine the Government's reason for its delay in filing the Indictment for two years. Id.

Therefore, Petitioner's argument that due process required the Government to indict him as soon as it discovered his conduct on June 5, 2010, is meritless.

---

[8] The securities fraud in Count (1) was alleged to have occurred between 2006 and 2010; the wire fraud in Count (2) was alleged to have occurred when an email was transmitted on October 3, 2007; and the money laundering charged in Count (3) was alleged to have occurred on or about November 27, 2009. (Case No. 3:12-cr-215, Doc. No. 1). All of these dates fall within the respective statutes of limitations from the date the Indictment was filed on June 20, 2012. See 18 U.S.C. § 3282 (five year statute of limitations for non-capital felonies unless otherwise specified); 18 U.S.C. § 3301 (six year statute of limitations for securities fraud). Petitioner's suggestion that the Government was required to charge him as soon as it discovered his activities, is incorrect. See, e.g., United States v. Perry, 757 F.3d 166, 173 (4th Cir. 2014) (defendant's social security fraud prosecution was not barred by the statute of limitations because the nature of the acts, which extended over a period of time, were treated as continuing offenses; rejecting defendant's argument that the statute of limitations began to run when the government knew of, or could have discovered, his non-disclosure).

(2)     **Ineffective Assistance of Trial Counsel**

When an accused manages his own defense, he relinquishes many of the traditional benefits associated with the right to counsel. Faretta v. California, 422 U.S. 806, 835 (1975). For this reason, in order to represent himself, the accused must waive those benefits "knowingly and intelligently." Id. (quoting Johnson v. Zerbst, 304 U.S. 458, 464-65 (1938) (plurality opinion of Black, J.)). Although a defendant does not need to have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." Id. (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942)). "The right to self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law. Thus, whatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complaint that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" Faretta, 422 U.S. at 835 n.46.

The record in the instant case reveals that Petitioner filed a written motion to excuse counsel and proceed *pro se* just 69 days after the Indictment was filed. (Case No. 3:12-cv-215, Doc. No. 9). Petitioner stated in open court that he was knowingly, intelligently, and voluntarily waiving the assistance of counsel and wished to represent himself. See (Id., Doc. No. 64). He specifically acknowledged that he would have to act as his own "negotiator" if there were to be any discussions about a possible plea. (Id., Doc. No. 64 at 15). Having chosen to proceed *pro se*, Petitioner "cannot now assert that he was denied the effective assistance of counsel." United States v. Bryson, 105 Fed. Appx. 470, 476 (4th Cir. 2004).

(A)-(B)          Double Jeopardy & Speedy Trial

Petitioner claims that "pre-trial counsel" was ineffective for failing to raise the alleged violations of (A) double jeopardy, and (B) speedy trial.

Petitioner's knowing and voluntary waiver of counsel precludes these claims. His attempt to avoid this conclusion by casting Mr. Adolf as "pre-trial counsel" is unavailing; his waiver was set forth on the record with knowledge of its full consequences. See (Case No. 3:12-cv-215, Doc. No. 64); Bryson, 105 Fed. Appx. at 476. Petitioner could have corrected any perceived deficiency of pre-trial counsel once Petitioner began representing himself. Moreover, Petitioner's double jeopardy and speedy trial claims are meritless for the reasons set forth in Sections (1)(A)-(B), *supra*.

(C)          Guilty Plea

Petitioner appears to argue that counsel was ineffective for misadvising him that, if he pled guilty to criminal contempt in case 3:10-cv-121, the Government would not pursue any additional charges, thus rendering his guilty plea in the criminal contempt case involuntary. Counsel stated in 2010 that he was "shopping around" for a prosecutor who would only pursue the criminal contempt charge. Had counsel investigated and negotiated a plea deal that included all of the charges ultimately brought, he would have taken a plea instead of going to trial. Petitioner would have accepted a plea agreement "to every included conviction but for counsel's erroneous, pie-in-the-sky advice." (Doc. No. 1 at 38). Petitioner realized this advice was incorrect at sentencing on the contempt charge. He appears to argue that counsel was further ineffective for failing to negotiate a combined plea to all the charges in case number 3:10-cv-121 and 3:12-cr-215. He was prejudiced by receiving a sentence eight years greater than the one he would have received had all the charges been combined.

In many cases, an evidentiary hearing is required to determine whether or not counsel was ineffective for misadvising a petitioner about a plea offer. See generally United States v. Witherspoon, 231 F.3d 923, 926–27 (4th Cir. 2000); 28 U.S.C.A. § 2255(b); see, e.g., United States v. Ray, 547 Fed. Appx. 343 (4th Cir. 2013) (it was abuse of discretion for failing to conduct an evidentiary hearing on petitioner's claim of ineffective assistance with regards to a plea offer where "[t]he record as it is stands bare" and, other than petitioner's own assertions in his affidavit and pleadings, there was no evidence as to what transpired between petitioner and counsel during the plea negotiations, what advice counsel gave him about the plea offer at issue, and on what basis). In the instant case, however, no evidentiary hearing is required because Petitioner's claims are not cognizable and waived.

First, to the extent Petitioner suggests that his guilty plea was involuntary in case number 3:10-cr-121, such a claim is not cognizable here and would have to be raised in a separate § 2255 proceeding.[9] See Rules Governing Section 2255 Proceedings in the U.S. District Courts, Rule 2(d) ("A moving party who seeks relief from more than one judgment must file a separate motion covering each judgment.").

Second, Petitioner's suggestion that counsel was ineffective for failing to negotiate a plea agreement in case number 3:12-cr-215 has been waived by his knowing and voluntary waiver of counsel. Bryson, 105 Fed. Appx. at 476. Further, Petitioner expressly acknowledged in open court that negotiating a plea with the Government would be his own responsibility; his present attempt to disavow that responsibility is rejected. See (Case No. 3:12-cr-215, Doc. No. 64 at 15); see generally Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported

---

[9] The Court expresses no opinion about the merit or procedural viability of such an action.

by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

It is apparent from the record that Petitioner now regrets his decision to proceed to trial without the assistance of counsel. His regret, however, provides no basis for shifting the blame for his own failings to Mr. Aldof. [10] Petitioner's claims that trial counsel was ineffective are therefore dismissed and denied.

(3)     **Ineffective Assistance of Appellate Counsel**

Petitioner contends that appellate counsel was ineffective for failing to raise the speedy trial violation on direct appeal. He also appears to assert that appellate counsel should have argued that trial counsel was ineffective for failing to raise the speedy trial issue because the several-year delay between the original charge and eventual trial was clear on the face of the record. He claims that, but for counsel's deficient performance there is a reasonable probability that the Court would

---

[10] Petitioner appended to his § 2255 motion an email between himself and Mr. Adolf dated October 31, 2016. Although the Court does not rely on the email to resolve this post-conviction motion, Mr. Aldof aptly summarized Petitioner's situation as follows:

> You insisted on going to trial because of a double jeopardy issue that I explained to you a dozen times was complete legal BS. You chose to believe what you wanted to believe, and as a result you got 14 years instead of the 9 to 11 ¾ you would have gotten with a plea. So your obsession with your double jeopardy theory cost you somewhere between an extra 2 ¼ years and 5 years in prison, or 2 to 4 ¼ years with good time. Probably closer to the 4 ½, since there would have been no reason for the judge to give you the high end of the range. I understand that in retrospect the fight may not have been wroth giving up 4 years of your life for, considering that you were obviously guilty and had no defense worth a crap, but that is the choice you made. I did everything I could do to stop you, and as a result my conscience is clear.

> Right now you have no claim whatsoever to make in any kind of 2255 or other appeal. You can't claim your lawyer was ineffective since you didn't have one. There was nothing more I could have done for you since you fired me and represented yourself at trial. A[nd] at sentencing, when you finally let me step back in, I convinced the judge to depart downward and give you 5 ½ years less than the low end of the guideline range. There is not a judge in the world that will ever say I was ineffective, because I wasn't. You were.

(Doc. No. 1 at 48).

have dismissed the charges or the court of appeals would have found in Petitioner's favor and remanded with instructions to dismiss the Indictment.

Petitioner's claims of ineffective assistance of trial counsel and speedy trial violation are meritless for the reasons set forth in Claims (1)(B) and (2)(B). Because "[t]he underlying arguments are meritless … it could scarcely be ineffective of appellate counsel not to raise them." Coley v. Bagley, 706 F.3d 741, 752 (6th Cir. 2013) ("[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial."); see Schneider v. United States, 864 F.3d 518 (7th Cir. 2017) (appellate counsel was not ineffective for failing to raise trial counsel's alleged ineffective assistance on direct appeal because the complaints about trial counsel were meritless).

Therefore, Petitioner's claim of ineffective assistance of appellate counsel will be denied.

## VI.    CONCLUSION

For the foregoing reasons, the Court dismisses and denies Petitioner's § 2255 Motion to Vacate and denies Petitioner's Motion to Order the Government to Respond.

**IT IS, THEREFORE, ORDERED** that:

1.    The Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DISMISSED** and **DENIED**.

2.    The Motion to Order the Government to Respond, (Doc. No. 2), is **DENIED**.

3.    The Clerk of Court is instructed to mail a copy of this Order to the Fourth Circuit Court of Appeals, noting **case number 17-2285**.

4.    IT IS FURTHER ORDERED that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.  See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable

jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: January 5, 2018

Robert J. Conrad, Jr.
United States District Judge