FROM: 25255058
TO: Sample, Brandon
SUBJECT: motion
DATE: 08/02/2020 08:29:47 PM

FILED
CHARLOTTE, NC

AUG 1 1 2020

US DISTRICT COURT
WESTERN DISTRICT OF NC

===================================================================

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

===================================================================

SEAN F. MESCAL, Petitioner

vs.                                         CASE# 3:12-CR-2115

                                            *New #._____*

UNITED STATES OF AMERICA, Respondent

_____

===================================================================

## EX PARTE MOTION FOR MODIFICATION OF SENTENCE PURSUANT TO 18 U.S.C.& 3582 (c)(1)(a)(i) and 4205(g) IN THE WAKE OF CORONAVIRUS

===================================================================

FOR GOOD CAUSE, comes Sean Fitzgerald Mescall with a request for a modification of sentence, compassionately and

filing {as} 28 U.S.C. & 1915, as a result of COVID 19, RESPECTFULLY.


IT IS AVERRED.

FROM: 25255058
TO: Sample, Brandon
SUBJECT: m. p 2
DATE: 08/02/2020 05:20:49 PM

## BACKGROUND

Mescall was arrested by the State of North Carolina on 09/09/09 for violations of securities laws and was issued a directive in connection with a $1.3 Million dollar Ponzi scheme. There, it promulgated Mescall and his companies to stop conduct of securities fraud, wire fraud and money laundering- it also ordered Mescall to fully cooperate with authorities and repatriate offshore funds and he did not.

In that year, Mescall continued his ill-gotten gains spree while on anklet and on June, 15th 2010, the FBI stormed Mescall residence and apprehended him accordingly. Mescall was subsequently charged and PLEADED guilty to 1 Count of Criminal Contempt pursuant to 18 U.S.C. 401(3)(b) in violation of this Court's order for not cooperating and his egregious absurd conduct that gave rise to the violation.

Mescall was sent to FCI Elkton and decided to file a Interstate Agreement on Detainers motion thinking that he could obviate his State charges and escape culpability in the State. Mescall was successful on his motion and the charges were dismissed, however, the Federal Government felt that he has not done enough time and indicted him for securities fraud wire fraud and money laundering for the conduct that gave rise to the Contempt conviction. Mescall contested these charges at trial and received 168 months more added to his original 27 month sentence from the contempt sanction.

Mescall was sent back to Federal prison and realized he was wrong and that in "the interest of justice" he should be incarcerated. At that point, Mescall continued to assist other inmates with there legal fillings, as he did in the Mecklenburg County Jail. Mescall was inept at securities trading but felt compelled to study federal law and it's overwhelming breadth and scope.

Mescall has been working everyday since then in UNICOR at several different facilities and continued his federal studies giving rise to the instant motion. Thus, Mescall adduces several compelling and extraordinary circumstances, ripe for adjudication accordingly-in these problematic times.

---

## EXHAUSTION OF ADMINISTRATIVE REMEDIES PURSUANT TO FIRST STEP ACT 2018
================================================================

After the passage of the desperately needed First Step Act, inmates compassionate release motions become cognizable after 30 days after filing with the warden of your institution. MESCALL, has exhausted all available remedies pursuant to [ROSS vs. BLAKE 578 US_ S.Ct 2016, therefore, his Petition is ripe for adjudication.(See)U.S. vs. Raia 20-1033(3rd Cir,2019) - also; [U.S. vs. Alam 20-1298 E.D. MICH].

In [U.S. vs. HEAD No;2:08-cr-00093-KJM-2 E.D. CALF], the court stated that Heads email to the Warden was sufficient to -

----------------------------------------------------------------------------------------------------

show exhaustion. On, March 25th 2010, Mescall emailed WARDEN (RIS- Reduction In Sentence Coordinator Box) and 32 days -

later Warden denied Mescall for compassionate Release. This man case is most analogous to Mescall's case-that being the -

merits and procedure( See Attachments showing email and denial).

   -Mescall would like to bring to the attention of this Court that he is pending litigation with respect to the denial of -

administrative forms by Milan BOP official staff member(s) giving rise to Due Process "procedural" and "substantive" -

violations resulting access -to the Courts. This is why Mescall filed his original 3582 motion pre-mature and was correctly -

denied by -your Honor-for failure to exhaust. (See case# 20-11110 Mescall vs. Hemingway E.D. MICH 2020) Mescall -

apologizes for the snafu.
+++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
+++++++++

--------------------------------------------------------------------------------

FROM: 25255058
TO: Sample, Brandon
SUBJECT: moriion 3
DATE: 08/02/2020 05:28:30 PM

========================================================================
=========
-                FACTUAL BASIS PURSUANT TO EXTRAORDINARY AND COMPELLING REASON(S)
========================================================================
=========
-   Mescall adduces a myriad of extraordinary and compelling reasons pursuant to 18 U.S.C. & 3582 (c)(1)(a)(i), in accordance with 18 U.S.C. 3553 and with respect to USSG 1.B1.13.
-

                1. Because Mescall is obese, suffers from hypertension, severe anxiety and a recovered alcoholic, he is more susceptible to perishment according to the CDC guidelines, (see Medical records, and literature in connection with the matter.
-

                2. The AUSA charged Mescall twice for conduct that gave rise to his contempt sanction and the instant case, contrary to stare decis pursuant to U.S. vs. Dixon 133 S.Ct 2849(1993). Your Honor departed correctly "in the interest of justice"
-

                3. In 2014, the Sentencing commission decided to amend it's fraud application(2.b1.1) with respect to the amount of monies illegally obtained, and if Mescall was sentenced today, he would receive about a two level difference(lower).

                4 .Mescall is housed in a facility that is rife with contagion and under suit by numerous inmates (promulgated by Mescall) complaining about the deplorable conditions and the such. (see) "The Inmates of Milan" CLASS ACTION; {SEAN FITZGERALD MESCALL vs. BUREAU OF PRISONS CASE# 4:20-11477, E.D. MICH 2020}. There, your Honor will see prima facie claims of a deliberate indifferent young Warden, as a result of the Pandemic.  Mescall is also in a companion Habeas Action requesting the testing of staff and inmates, soap, bleach, et cetra, (see) Sean F. Mescall vs. Jonathan Hemingway, case #20-1110 E.D. MICH 2020). Please read suit, as collateral estoppell may prevent re-litigation if the merits are discussed here. Mescall is housed in FCI Milan, where the Officers are litigating also because the Warden satisfied the objective and subjective components pursuant to the (Helling vs. Mckinney 924 F. 2d 1500 (9th cir 1991) High Court standard of " subjective recklessness" (see) Class Action suit by Randy Hall, corrections officer at Milan FCI whom was told to return to work by the same Warden despite the fact he had COVID 19, exposing everyone resulting 3 dead inmates and 6 staff, thousands infected if tested.  GOOGLE= CORRECTIONS OFFICE TOLD TO RETURN TO WORK, FCI MILAN MICHIGAN RANDY HALL; also YOUTUBE VIDEO "POOR CONDITIONS AT FCI MILAN DURING PANDEMIC"  this "shocks the conscience" and is extraordinary on it's face alone. Mialn FCI cannot be trusted with Mescall, early release is warranted.
-

****5. MESCALL HAS NOT SEEN HIS FATHER SINCE HE LEFT JAIL ALMOST 7 YEARS AGO- his father is now 80 years old, not in good health and Mescall is worried sick that he may never see him again, especially now in the wake of COVID 19. Mescall's father has chronic bronchitis, COPD and other pulmonary hindrances that give rise to death if he gets sick, according to the CDC, Dr. Fauci, WHO.
-

6. During the last 10 years of imprisonment, Mescall has helped hundreds of inmates with their post conviction remedies resulting in 13 people released early (because of legal errors), Administrative remedies forms and the such.

7. Mescall was teaching ace classes about importance of education, and tutoring illiterate inmates for their GED.(sometimes there is literally a line of inmates in front of his cell)

8. Mescall has been sober from his drug of "choice" (alcohol) since his apprehension in 2010, but relapsed recently amid the panic of the coronavirus and smoked K-2 resulting in hurting himself with a contusion to the hip but recovered and is now sober.

9. 10 years ago, Mescall would have attempted to hide or conceal this fact from the Court- if he felt it would materially sway Your Honor, but now feels compelled to be honest, even if this Court denies his request based off that revalation.
-

10.  MESCALL FEELS COMPELLED to be honest at any cost, contrary to his pre-indictment posture accordingly.  He is now a practicing Catholic and prays your Honor will see the obvious change, accordingly (see)"Godly Leadership Course" on Team review sheet.

--------------------------------------------------------------------------------------

-
**** Furthermore, the Director of the BOP has not deemed Mescall a threat to society ( see PATTERN SCORE) and Mescall has satisfied the prong's set forth by Congressional legislatures with respect to extraordinary and compelling reasons.

FEDERAL QUESTION:

-
DOES THE COMPELLED exposure TO COVID-19 INSIDE THE BOP GIVE RISE TO CRUEL AND UNSUAL PUNISHMENT RESULTING IN A EXTRAORDINARY CIRCUMSTANCE?

-
ANSWER ✔ YES

+++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
+++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
++++++++++++++++

FROM: 25255058
TO: Luckman, Shannon
SUBJECT: mot 6
DATE: 08/03/2020 06:07:01 AM

-                                                   RELEASE PLAN

   I plan on getting my paralegal certification and becoming a paralegal, after years of doing law for work HERE for key fellow inmates. My sister is a real estate agent and I plan on assisting her with her paperwork etcetra. I will be staying at my fathers girlfriends house who is very wealthy and takes care of all of us. *LAUREL, JERRY MESCALL 704-534-4630 (see) AFFIVIT*
-
-                                                   MEDICAL

   INSTANTANEOUSLY, after release I plan on getting Obamacare and securing my own insurance as I always did. I have medications that I need, so it will not be a problem.
================================================================================
================================================================================
==================
PERSONAL STATEMENT
_____

   I have SUFFERED a tremendous set back in my life because of my foolish conduct. Prisons are not filled with white collar offenders like Me and I have felt "out of place" for 10 years. It was a total embarrassment to the Court, my family, friends and the community and I am very sorry for my bogus actions. At the time, I was knee deep in alcoholism and suffered greatly, however, I have been sober for 10 years and I am not in interested in drinking whatsoever. I will be willing to increase my payment options when I secure employment as soon as I leave with respect to monetary obligations of this Courts order in the civil case and this case. Most important, I have not seen my father in almost 7 years, All because of my stupid idea of spending clients money that was supposed to be invested. Throughout my journey here in prison, I went to college, studied law and worked everyday at Unicor industries. I love to work, and I always did.

   When I was indicted, I was upset at everyone and could not resist the temptation to myopically focus on myself, while my investors suffered losses because I lied to them about their money while I was spending it like a dope- absolutely uncalled for and I am truly sorry for my actions, it will never happen again. May I always Remain,
-
Very Truly Yours,                        date 7/8/2020

SEAN F. MESCALL 25255058
FCI MILAN
PO BOX 1000
MILAN MI 48160

FROM: 25255058
TO: Sample, Brandon
SUBJECT: m 5
DATE: 08/03/2020 06:09:05 AM

-                                    PERSONAL AFFIDAVIT

I Sean F. Mescall hereby declare under penalty of perjury in connection with 28 U.S.C 1746, the content below is true and correct to the best of my ability. I am of my own volition.

1. Because there is no soap, bleach, or ability to social distance or stay 6 feet apart at any given point here in Milan FCI, I am more than likely to contract this nefarious disease AGAIN.

2. I am in current litigation with this facility because of the conditions of confinement that give rise to a deliberate indifferent warden. (see) case # 20-11110 Sean F. Mescall vs. Jonathan Hemingway {E.D. MICH} and Sean Fitzgerald Mescall vs. Bureau of Prisons, 4:20-11477 CLASS ACTION" The inmates of Milan."

3. There is a YOUTUBE VIDEO proving the deplorable conditions I live in, (see) "POOR CONDITIONS AT FCI MILAN DURING PANDEMIC"
4. Right after the national lockdown, everyone in my unit(f) became ill with loss of taste, smell and very sick with flu like symptoms. Then, there was almost no staff to help us and many inmate nearly died.

5. I was not tested with the antibodies proving I had covid 19, but survived.  A second wave is already coming and the BOP CANNOT be trusted to facilitate the health and safety of staff and inmates.( see) FCI Elkton, Danbury, Milan, Lompoc and many more.
6. I have several co-morbidities that would give rise to death if I get sick aging ( see) Medical Records
7. this Warden is materially misrepresenting the true numbers of infected inmates giving rise to a "hero" syndrome, as we ALL got sick and the prison DID NOT TEST ANYONE- if you show no symtoms or at all.

Sean Fitzgerald Mescall 25255058

-------------------------------------------Date  7/5/20

FCI MILAN
P.O. Box 1000
Milan MI 48160

--------------------------------------------------------------------------------

FROM: 25255058
TO: Sample, Brandon
SUBJECT: motion 7
DATE: 08/02/2020 05:32:16 PM

-                                    CONCLUSION AND PRAYER

-   WHEREFORE, Mescall respectfully request that this Court modify his sentence to include spending the remainder of his -
-
sentence on supervised release with or without an anklet, or in the alternative, reduce sentence completely to time served -
-
according with 18 USC & 3582(C)(1(a)(i) and in connection with 18 USC & 3553 factors accordingly.

Sean F. Mescall- 25255058
FCI MILAN
P.O. Box 1000
Milan, MI 48160

Your request for Compassionate Release/Reduction in Sentence (RIS) has been reviewed pursuant to 18 U.S.C. 3582 (c)(1)(A).   We will not be pursuing a request for compassionate release in your case.

A review of your request reveals you have submitted a request for a reduction in sentence based on inmates with a debilitating medical condition.

Program Statement 5050.50, states a request for a motion under 18 U.S.C. 4205(g) or 3582(c)(1)(A) shall be submitted to the Warden.   Ordinarily, the request shall be in writing, and submitted by the inmate.   An inmate may initiate a request when there are particularly extraordinary or compelling circumstances which could not be reasonably have been foreseen by the court at the time of sentencing.   The criteria for a RIS request as an inmate with a debilitated medical condition requires that you are experiencing a deteriorating mental or physical health condition that substantially diminishes your ability to function in a correctional facility and conventional treatment promises no substantial improvement to your mental or physical condition.   Further you can carry on self-care and are not confined to a bed or chair more that 50% of waking hours.

The Bureau of Prisons (BOP) is carefully monitoring the spread of the COVID-19 virus and taking extraordinary measures to contain it. As with any type of emergency situation, we carefully assess how to best ensure the safety of staff, inmates and the public.

Your current debilitated medical condition, with or without the spread of the COIVD-19 virus, does not meet the criteria outlined in the paragraph above. We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus. However, your concern about being potentially exposed to, or possibly contracting COVID-19 does not currently warrant an early release.

Accordingly, your Request for Reduction in Sentence is denied.   In the event you are not satisfied with this response and wish to appeal, you may contact your Unit Team to initiate an appeal in accordance with the Administrative Remedy Program.   Please note, this appeal process begins with a BP-9 (Warden level).

I trust this addresses your concerns.


Jonathan Hemingway, Warden                          4/27/20
                                                                                 Date

From:      ^I"MESCALL, ^!SEAN F" <25255058@inmatemessage.com>
To:
Date:      3/25/2020 6:48 AM
Subject:      ***Request to Staff*** MESCALL, SEAN, Reg# 25255058, MIL-F-A

To: Mr. Burnett
Inmate Work Assignment: Unicor

***ATTENTION***

Please cut and paste the message indicator below into the subject line; only this indicator can be in the subject line.
31f6d607-0330-4d9f-bb92-b95942e20feb
Your response must come from the departmental mail box. Responses from personal mailboxes WILL NOT be delivered to the inmate.

***Inmate Message Below***


You emailed me back with respect how I would qualify...

I read the program statement, in detail, and in light of the recent Pandemic and pursuant to the law, I qualify for a special consideration warranting a reduction in sentence. I also have done 75% of my time at my 11th year in prison with 3 years left to go.
I suffer from hypertension, and serious mental health problems such as anxiety and depression. I take medications for all three and have a great length of history of hospitalizations and so forth.

With that being said, I there a form I need to fill out, or do I, "motion in legal format" and send my request to the Warden??

What is the next step?? Please advise and thank you.

Exhaustion #1

--------------------------------------------------------------------------------

FROM: 25255058
TO: Sample, Brandon
SUBJECT: m 4.
DATE: 08/02/2020 09:14:49 AM

================================================================================
================================================================================
==================
-                       AFFIDAVIT PURSUANT TO 28 & U.S.C 1746
================================================================================
================================================================================
==================

-      I declare under penalty of perjury that the foregoing is true and accurate to the best of my ability accordingly.

 1. My son Sean F. Mescall will be staying with me and my girlfriend here in Cornelius North Carolina. Here, were have separate rooms so we can all stay 6 feet apart if needed, according to the CDC guidelines and we have PPE, to include masks.

2. We have a sufficient amount of soap and bleach to combat an foreign ailments including COVID 19.

3. My son will be working, but my girlfriend has plenty of money for food, PPE, masks, bleach and she pays the rent.

Therefore, my son will not be a hazard to me or our community.

Date: 7/1/20

Gerald T. Mescall
1721 Lovers Lawn Trace
Apt. 404
Cornelius, NC 28031

# MALE PATTERN RISK SCORING

| Register Number: | 25255-058 | Date: | 7/29/2020 |
|---|---|---|---|
| Inmate Name: | Mescall, Sean | | |

| MALE RISK ITEM SCORING | CATEGORY | GENERAL SCORE | Enter Score | VIOLENT SCORE | Enter Score |
|---|---|---|---|---|---|
| **1. Current Age** <br> 41-50 <br> Click on gray dropdown box to select, then click on dropdown arrow | > 60 | 0 | 14 | 0 | 8 |
| | 51-60 | 7 | | 4 | |
| | 41-50 | 14 | | 8 | |
| | 30-40 | 21 | | 12 | |
| | 26-29 | 28 | | 16 | |
| | < 26 | 35 | | 20 | |
| **2. Walsh w/Conviction** <br> No | No | 0 | 0 | 0 | 0 |
| | Yes | 1 | | 0 | |
| **3. Violent Offense (PATTERN)** <br> No | No | 0 | 0 | 0 | 0 |
| | Yes | 5 | | 5 | |
| **4. Criminal History Points** <br> 4 - 6 Points | 0 - 1 Points | 0 | 16 | 0 | 8 |
| | 2 - 3 Points | 8 | | 4 | |
| | 4 - 6 Points | 16 | | 8 | |
| | 7 - 9 Points | 24 | | 12 | |
| | 10 - 12 Points | 32 | | 16 | |
| | > 12 Points | 40 | | 20 | |
| **5. History of Escapes** <br> None | None | 0 | 0 | 0 | 0 |
| | > 10 Years Minor | 2 | | 1 | |
| | 5 - 10 Years Minor | 4 | | 2 | |
| | < 5 Years Minor/Any Serious | 6 | | 3 | |
| **6. History of Violence** <br> None | None | 0 | 0 | 0 | 0 |
| | > 10 Years Minor | 1 | | 1 | |
| | > 15 Years Serious | 2 | | 2 | |
| | 5 - 10 Years Minor | 3 | | 3 | |
| | 10 - 15 Years Serious | 4 | | 4 | |
| | < 5 Years Minor | 5 | | 5 | |
| | 5 - 10 Years Serious | 6 | | 6 | |
| | < 5 Years Serious | 7 | | 7 | |
| **7. Education Score** <br> HS Degree / GED | Not Enrolled | 0 | -4 | 0 | -2 |
| | Enrolled in GED | -2 | | -1 | |
| | HS Degree / GED | -4 | | -2 | |
| **8. Drug Program Status** <br> No Need | No DAP Completed | 0 | -9 | 0 | -3 |
| | NRDAP Complete | -3 | | -1 | |
| | RDAP Complete | -6 | | -2 | |
| | No Need | -9 | | -3 | |
| **9. All Incident Reports (120 months)** <br> 2 | 0 | 0 | 2 | 0 | 2 |
| | 1 | 1 | | 1 | |
| | 2 | 2 | | 2 | |
| | > 2 | 3 | | 3 | |
| **10. Serious Incident Reports (120 months)** <br> 2 | 0 | 0 | 4 | 0 | 4 |
| | 1 | 2 | | 2 | |
| | 2 | 4 | | 4 | |
| | > 2 | 6 | | 6 | |
| **11. Time Since Last Incident Report** <br> 7-12 months | 12+ months or no incidents | 0 | 2 | 0 | 1 |
| | 7-12 months | 2 | | 1 | |
| | 3-6 months | 4 | | 2 | |
| | <3 | 6 | | 3 | |
| **12. Time Since Last Serious Incident Report** <br> 7-12 months | 12+ months or no incidents | 0 | 1 | 0 | 2 |
| | 7-12 months | 1 | | 2 | |
| | 3-6 months | 2 | | 4 | |
| | <3 | 3 | | 6 | |
| **13. FRP Refuse** <br> NO | NO | 0 | 0 | 0 | 0 |
| | YES | 1 | | 1 | |
| **14. Programs Completed** <br> 4 - 10 | 0 | 0 | -6 | 0 | -3 |
| | 1 | -2 | | -1 | |
| | 2 - 3 | -4 | | -2 | |
| | 4 - 10 | -6 | | -3 | |
| | > 10 | -8 | | -4 | |
| **15. Work Programs** <br> 1 Program | 0 Programs | 0 | -1 | 0 | -1 |
| | 1 Program | -1 | | -1 | |
| | >1 Program | -2 | | -2 | |
| **Total Score (Sum of Columns)** | | General: | 19 | Violent: | 16 |
| **General/Violent Risk Levels** | | General: | Low | Violent: | Low |
| **OVERALL MALE PATTERN RISK LEVEL** | | | | | Low |

NO THREAT  7/29/20



**Individualized Reentry Plan - Program Review (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: MESCALL, SEAN F  25255-058

SEQUENCE: 01686079
Team Date: 05-07-2020

| | | | |
|---|---|---|---|
| Facility: | MIL MILAN FCI | Proj. Rel. Date: | 08-22-2024 |
| Name: | MESCALL, SEAN F | Proj. Rel. Mthd: | GCT REL |
| Register No.: | 25255-058 | DNA Status: | ELK06244 / 07-27-2011 |
| Age: | 41 | | |
| Date of Birth: | 02-13-1979 | | |

## Detainers

| Detaining Agency | Remarks |
|---|---|

*NO DETAINER*

## Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| MIL | UPRSS 12 | PRESS 6:45 AM - 1030 AM | 01-29-2020 |

## Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| MIL | ESL HAS | ENGLISH PROFICIENT | 08-03-2011 |
| MIL | GED HAS | COMPLETED GED OR HS DIPLOMA | 07-28-2011 |

## Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| MIL | C | P1 HUM 131 WEDNESDAY 1200-1530 | 06-05-2019 | 08-22-2019 |
| MIL | C | P1 ENG 247 TUESDAY 1630-1930 | 06-04-2019 | 08-22-2019 |
| MIL | C | P1 ENG 131 TUESDAY 1200-1530 | 06-04-2019 | 08-22-2019 |
| MIL | C | P1 BUA 121 FRIDAY 1200-1530 | 05-31-2019 | 08-20-2019 |
| COL | C | ACE CLASS AUTO SALES | 08-09-2018 | 12-29-2018 |
| COL | C | RE-ENTRY GODLY LEADERSHIP CLAS | 03-15-2018 | 05-21-2018 |
| ELK | C | AIDS AWARENESS-RPP<HN> | 02-25-2015 | 02-25-2015 |
| ELK | C | DIVERSITY AWARENESS-RPP<PG> | 02-25-2015 | 02-25-2015 |

## Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|---|---|

## Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 04-16-2019 |
| CARE1-MH | CARE1-MENTAL HEALTH | 08-31-2011 |

## Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| NO PAPER | NO PAPER MEDICAL RECORD | 07-29-2011 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 09-08-2016 |
| YES F/S | CLEARED FOR FOOD SERVICE | 02-18-2015 |

## Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| DAP UNQUAL | RESIDENT DRUG TRMT UNQUALIFIED | 04-04-2019 |
| ED COMP | DRUG EDUCATION COMPLETE | 02-05-2016 |

## FRP Details

| Most Recent Payment Plan |
|---|

| | | | |
|---|---|---|---|
| **FRP Assignment:** | **EXEMPT** | **FINANC RESP-TEMPORARILY** | **Start: 12-31-2019** |
| Inmate Decision: | **AGREED** | **$25.00** | Frequency: **QUARTERLY** |
| Payments past 6 months: | **$0.00** | Obligation Balance: | **$1,295,622.60** |

### Financial Obligations

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $100.00 | $0.00 | IMMEDIATE | COMPLETEDZ |
| | | *** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ***| | | |

Archived as of 05-07-2020          Individualized Reentry Plan - Program Review  (Inmate Copy)          Page 1 of 3



**Individualized Reentry Plan - Program Review (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: MESCALL, SEAN F  25255-058

SEQUENCE: 01686079
Team Date: 05-07-2020

| Most Recent Payment Plan | | | | | |
|---|---|---|---|---|---|
| No. | Type | Amount | Balance | Payable | Status |
| 3 | ASSMT | $300.00 | $0.00 | IMMEDIATE | COMPLETEDZ |
| | | ** *NO ADJUSTMENTS MADE IN LAST 6 MONTHS* ** | | | |
| 2 | REST FV | $47,626.76 | $46,809.70 | IMMEDIATE | WAIT PLAN |
| | | ** *NO ADJUSTMENTS MADE IN LAST 6 MONTHS* ** | | | |
| 4 | REST FV | $1,248,812.90 | $1,248,812.90 | IMMEDIATE | WAIT PLAN |
| | | ** *NO ADJUSTMENTS MADE IN LAST 6 MONTHS* ** | | | |

**Payment Details**

Trust Fund Deposits - Past 6 months:  $209.11          Payments commensurate ?   Y

New Payment Plan:  | ** No data ** |

**Progress since last review**

Mescall has not completed any courses since his last review.  He obtained a job in UNICOR working in the Press Department. He has received incident report since his last review.

**Next Program Review Goals**

The Unit Team recommends the following:  enroll in and complete two courses offered through UNICOR by the next scheduled team. Start taking classes again through Jackson College by the next scheduled team.

**Long Term Goals**

The Unit Team recommends the following:  prior to your release enroll in and complete courses that will assist you with finding employment and readjusting to community living such as Jackson College, courses offered through psychology, Auto VT,  courses offered through UNICOR, Jobs Skills, Consumer Credit, and Personal Financial Management.  Save money each month to prepare for release.  Obtain a degree through Jackson College by the time you release.

**RRC/HC Placement**

No.
Management decision - Will be reviewed 17-19 months from release..

**Comments**

Finance/Poverty Need Screen Is there documentation in the PSR of any of the following? __ Any history of Bankruptcy __ No bank account _X_ No assets nor liabilities noted in PSR _X_ Debts noted in Credit Report or other sources __ Tax Liabilities/back taxes __ Unpaid alimony/child support __ other indications of lack of financial management skills (specify) _____ YES ___X___ NO _____ (if any of the above, check yes) If the answer is yes, the inmate has a financial/poverty skills need.

Case 3:12-cr-00215-RJC    Document 88    Filed 08/11/20    Page 27 of 42

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-202-RJC
(3:12-cr-215-RJC-1)

| | | |
|---|---|---|
| SEAN F. MESCALL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), and Motion to Order Government to Respond, (Doc. No. 2). The § 2255 Motion to Vacate will be denied and the Motion to Order the Government to Respond will be denied.[1]

**I.     BACKGROUND[2]**

On September 9, 2009, the Commodities Futures Trading Commission brought a civil action against Petitioner, charging him with operating the Ponzi scheme. On September 16, 2009, the Court issued a preliminary injunction forbidding the movement of assets, appointing a receiver, and requiring Petitioner to cooperate fully with the receiver. Petitioner violated the preliminary injunction, and the Court found him in contempt. The Court stayed imposition of civil contempt sanctions and referred the matter to the U.S. Attorney for possible criminal contempt proceedings.

---

[1] Petitioner filed a petition for writ of mandamus with regards to this Action in the Fourth Circuit Court of Appeals on October 30, 2017, which is pending in Fourth Circuit case number 17-2285.

[2] This section is gleaned in part from the summary contained in the Fourth Circuit Court of Appeals' decision in United States v. Mescall, 624 Fed. Appx. 103, 103 (4th Cir. 2015).

1

 excess

**U.S. Department of Justice**
Federal Bureau of Prisons

*Federal Correctional Institution*
*4000 East Arkona Road*
*Milan, Michigan 48160*

August 7, 2019

MEMORANDUM FOR INMATE POPULATION

FROM:      J. A. Terris, Warden

SUBJECT:   Procedures for Requesting a Reduction in Sentence
           (RIS)/Compassionate Release

Procedures for requesting a Reduction in Sentence (RIS)/Compassionate Release as outlined by Program Statement 5050.50, Compassionate Release/Reduction in Sentence are as follows:

**§ 571.61 Initiation of request – extraordinary or compelling circumstances.**

a.  A request for a motion under 18 U.S.C. 4205(g) or 3582(c)(1)(A) shall be submitted to the Warden.  Ordinarily, the request shall be in writing, and submitted by the inmate.  An inmate may initiate a request for consideration under 18 U.S.C. 4205(g) or 3582(c)(1)(A) only when there are particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing.  The inmate's request shall at a minimum contain the following information:

(1)     The extraordinary or compelling circumstances that the inmate believes warrant consideration.

(2)     Proposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment.

b.  The Bureau of Prisons processes a request made by another person on behalf of an inmate in the same manner as an inmate's request.  Staff shall refer a

**request received at the Central Office to the Warden of the institution where the inmate is confined.**

A request for a RIS is considered "submitted" for the purposes of 18 USC §3582 (c)(1), when received by the Warden in accordance with this section.

It is important to note that a request for Reduction in Sentence (RIS)/Compassionate Release is different than a request for Home Confinement under the First Step Act. All inmates are strongly encouraged to review P5050.50, Compassionate Release/Reduction in Sentence prior to submitting their request for Reduction in Sentence (RIS)/Compassionate Release.

Inmates can send a request electronically to the Warden via the **MIL/InmateToRisCoordinator** mailbox, once received the request will be considered submitted. If you are unable to process your request electronically, please submit your request to the Warden via the RIS Coordinator.

First Step Act 404 - 4 [illegible] violated Did not ed. or minority
US v. Gravatt
N 019-C85

3582 Does not clearly state exhaustion was jurisdictional

Equitable tolling = SANDOZ v. Cingular Wireless
18 USC. 3142(g) 1556 13/13

1st time offender
- Berz Mona 23, daughter
- Restitution
- Need more time
- 3 yo old daughter
- 6 months [illegible] big house need.

E-FILED
Thursday, 21 May, 2020  03:47:11 PM
Clerk, U.S. District Court, ILCD



**Office of the Attorney General**
**Washington, D. C. 20530**

April 3, 2020

MEMORANDUM FOR DIRECTOR OF BUREAU OF PRISONS

FROM:            THE ATTORNEY GENERAL

SUBJECT:     Increasing Use of Home Confinement at Institutions Most Affected by
COVID-19

The mission of BOP is to administer the lawful punishments that our justice system imposes. Executing that mission imposes on us a profound obligation to protect the health and safety of all inmates.

Last week, I directed the Bureau of Prisons to prioritize the use of home confinement as a tool for combatting the dangers that COVID-19 poses to our vulnerable inmates, while ensuring we successfully discharge our duty to protect the public. I applaud the substantial steps you have already taken on that front with respect to the vulnerable inmates who qualified for home confinement under the pre-CARES Act standards.

As you know, we are experiencing significant levels of infection at several of our facilities, including FCI Oakdale, FCI Danbury, and FCI Elkton. We have to move with dispatch in using home confinement, where appropriate, to move vulnerable inmates out of these institutions. I would like you to give priority to these institutions, and others similarly affected, as you continue to process the remaining inmates who are eligible for home confinement under pre-CARES Act standards. In addition, the CARES Act now authorizes me to expand the cohort of inmates who can be considered for home release upon my finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons. I hereby make that finding and direct that, as detailed below, you give priority in implementing these new standards to the most vulnerable inmates at the most affected facilities, consistent with the guidance below.

I.      **IMMEDIATELY MAXIMIZE APPROPRIATE TRANSFERS TO HOME CONFINEMENT OF ALL APPROPRIATE INMATES HELD AT FCI OAKDALE, FCI DANBURY, FCI ELKTON, AND AT OTHER SIMILARLY SITUATED BOP FACILITIES WHERE COVID-19 IS MATERIALLY AFFECTING OPERATIONS**

While BOP has taken extensive precautions to prevent COVID-19 from entering its facilities and infecting our inmates, those precautions, like any precautions, have not been perfectly successful at all institutions. I am therefore directing you to immediately review all inmates who have COVID-19 risk factors, as established by the CDC, starting with the inmates incarcerated at FCI Oakdale, FCI Danbury, FCI Elkton, and similarly situated facilities where you determine that COVID-19 is materially affecting operations. You should begin implementing this directive immediately at the facilities I have specifically identified and any other facilities facing similarly serious problems. And now that I have exercised my authority under the CARES Act, your review should include all at-risk inmates—not only those who were previously eligible for transfer.

For all inmates whom you deem suitable candidates for home confinement, you are directed to immediately process them for transfer and then immediately transfer them following a 14-day quarantine at an appropriate BOP facility, or, in appropriate cases subject to your case-by-case discretion, in the residence to which the inmate is being transferred. It is vital that we not inadvertently contribute to the spread of COVID-19 by transferring inmates from our facilities. Your assessment of these inmates should thus be guided by the factors in my March 26 Memorandum, understanding, though, that inmates with a suitable confinement plan will generally be appropriate candidates for home confinement rather than continued detention at institutions in which COVID-19 is materially affecting their operations.

I also recognize that BOP has limited resources to monitor inmates on home confinement and that the U.S. Probation Office is unable to monitor large numbers of inmates in the community. I therefore authorize BOP to transfer inmates to home confinement even if electronic monitoring is not available, so long as BOP determines in every such instance that doing so is appropriate and consistent with our obligation to protect public safety.

Given the speed with which this disease has spread through the general public, it is clear that time is of the essence. Please implement this Memorandum as quickly as possible and keep me closely apprised of your progress.

## II.    PROTECTING THE PUBLIC

While we have a solemn obligation to protect the people in BOP custody, we also have an obligation to protect the public. That means we cannot simply release prison populations en masse onto the streets. Doing so would pose profound risks to the public from released prisoners engaging in additional criminal activity, potentially including violence or heinous sex offenses.

That risk is particularly acute as we combat the current pandemic. Police forces are facing the same daunting challenges in protecting the public that we face in protecting our inmates. It is impossible to engage in social distancing, hand washing, and other recommend steps in the middle of arresting a violent criminal. It is thus no surprise that many of our police officers have fallen ill with COVID-19, with some even dying in the line of duty from the disease. This pandemic has dramatically increased the already substantial risks facing the men and women who keep us safe, at the same time that it has winnowed their ranks while officers recover from getting sick, or self-quarantine to avoid possibly spreading the disease.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

Sean F. Mescall, 25255-058,

Petitioner,

Case No.   20-11110

v.

Judge Victoria A. Roberts

Jonathan Hemingway,

Magistrate Judge David R. Grand

Respondent(s).

_____/

### ORDER REQUIRING RESPONSIVE PLEADING

The petition for writ of habeas corpus having been reviewed and it appearing that the petition is not subject to summary dismissal upon initial review;

**IT IS ORDERED** that a responsive pleading be filed in this matter on or before _June 17, 2020_. Petitioner shall have forty-five (45) days from the date of the responsive pleading to file a reply.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve a copy of this Order on the Respondent(s) by first class mail as provided in Rule 4, and also provide a copy to the United States Attorney for the Eastern District of Michigan.

Date: _May 13, 2020_                                      s/R. Steven Whalen
                                                          R. Steven Whalen
                                                          United States Magistrate Judge

_____

### Certificate of Service

I certify that, on the date indicated below, I arranged for service as provided above, and I mailed a copy of this Order to Petitioner.

Date: _May 13, 2020_                                      s/N. Ahmed
                                                          Deputy Clerk

Record
— Eagle Picture
    Clean
1 sec or bigger
        CDC
— Penn Site
Emails cr (2241)

NCB
TO
BUTTS

# INCIDENT REPORT

BP-A0288
JAN 17

**U.S. DEPARTMENT OF JUSTICE**      **FEDERAL BUREAU OF PRISONS**

## Part I - Incident Report

| | | | |
|---|---|---|---|
| 1. Institution: FCI MILAN | | Incident Report Number: | |

| | | | |
|---|---|---|---|
| 2. Inmate's Name: <br> Mescall Sean F | 3. Register Number: <br> 25255-058 | 4. Date of Incident: <br> 31 December 2019 | 5. Time: <br> 11:35 A.M. |

| | | |
|---|---|---|
| 6. Place of Incident: <br> FCI Dinning Hall | 7. Assignment: <br> BAKERY FOOD PREP | 8. Unit: <br> C01-110U |

| | |
|---|---|
| 9. Incident: <br> POSSESSION OF STOLEN PROPERTY ~~Unauthorized item~~ | 10. Prohibited Act Code(s) <br> ~~226~~ / 305 |

**11. Description of Incident** (Date: 31 December 2019   Time: 11:35 A.M. Staff became aware of incident):

On 31 December 2019 at approximately 11:35 A.M, I Officer Boertje, conducted a random pat search on I/M Mescall, Sean Reg. # 25255-058 outside the Dinning facility. While conducting the pat search I felt an unknown object underneath I/M Mescall's clothing on his lower back. I lifted his jacket and shirt which reviled an un-opened holiday strawberry cheesecake, and another saran wrapped around his waist.

After notifying AFSA Mitchell of the incident, she informed that the price of one strawberry cheesecake was $2.125 each. The total coast of both strawberry cheesecakes confiscated totaled to an amount of $4.25.

| 12. Typed Name/Signature of Reporting Employee: <br> C. BOERTJE/ | 13.Date And Time: <br> 31 December 2019 12:09 P.M. |
|---|---|

| 14. Incident Report Delivered to Above Inmate By <br> (Type Name/Signature) | 15 .Date Incident Report Delivered: <br> 12/31/19 | 16. Time Incident Report Delivered: <br> 12:40pm |
|---|---|---|

## Part II - Committee Action

**17. Comments of Inmate to Committee Regarding Above Incident:**

_____

_____

_____

_____

| 18. A. It is the finding of the committee that you: | B. | The Committee is referring the Charge(s) to the DHO for further Hearing. |
|---|---|---|
| _____ Committed the Prohibited Act as charged. <br> _____ Did not Commit a Prohibited Act. <br> _____ Committed Prohibited Act Code(s). _____ _____ | C. | The Committee advised the inmate of its finding and of the right to file an appeal within 20 calendar days. |

**19. Committee Decision is Based on Specific Evidence as Follows:**

_____

_____

**20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act):**

_____

_____

**21. Date and Time of Action:**_____(The UDC Chairman's signature certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings).

_____    _____    _____

Chairman (Typed Name/Signature)     Member (Typed Name)     Member (Typed Name)

INSTRUCTIONS: All items outside of heavy rule are for staff use only. Begin entries with the number 1 and work up. Entries not completed will be voided by staff.



COPY

(( class
action suit

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

Sean F. Mescall,

Plaintiff(s),

v.

Bureau of Prisons, et al.,

Defendant(s),

Case No. 4:20-cv-11477-SDD-APP
Hon. Stephanie Dawkins Davis

## NOTICE REGARDING PARTIES' RESPONSIBILITY TO NOTIFY COURT OF ADDRESS CHANGE

**THIS NOTICE IS A REMINDER** that you are required, pursuant to E.D. Mich. LR 11.2, to promptly file a notice with the Clerk and serve a copy of the notice on all parties whenever your address, e-mail address, phone number and/or other contact information changes. In addition, Rule 11 of the Federal Rules of Civil Procedure requires you to include your address on every document filed with the Clerk.

Failure to promptly notify the court of a change in address or other contact information may result in the **dismissal** of your case.

Notices regarding changes to your address or other contact information should include the following:

- Your Name
- Your New Address
- Your New E-Mail Address and/or Telephone Number
- Your Case Number
- If you are a prisoner, your Inmate Number

Send your notice to the Clerk at:

United States District Court
Clerk's Office
231 Lafayette Boulevard
Detroit, Michigan 48226

Remember, your failure to promptly notify the court of a change in address or other contact information may result in the **dismissal** of your case.

### Certificate of Service

I hereby certify that on this date a copy of the foregoing notice was served upon the parties and/or counsel of record by electronic means or first class U.S. mail.

DAVID J. WEAVER, CLERK OF COURT

By: s/K Castaneda
Deputy Clerk

Dated: June 29, 2020

FILED
CHARLOTTE, NC

AUG 11 2020

US DISTRICT COURT
DISTRICT OF NC



**Congressional Research Service**
Informing the legislative debate since 1914

SUMMARY

R46297

April 23, 2020

Nathan James
Analyst in Crime Policy

Michael A. Foster
Legislative Attorney

# Federal Prisoners and COVID-19: Background and Authorities to Grant Release

There is concern that coronavirus disease 2019 (COVID-19) could quickly spread among federal prisoners and prison staff because of the nature of the prison environment. Prisons are places where hundreds of prisoners and staff are living and working in close proximity to each other and where they are forced to have regular contact. Prisons are generally not conducive to social distancing. Also, prison infirmaries typically do not have the resources available to most hospitals, such as isolation beds, that would help prevent the spread of the disease. There are also concerns that if prison staff were hard hit by COVID-19, a significant number of staff would require quarantine; they would be unavailable to perform their duties, including providing care to sick prisoners; and the disease could spread.

On March 13, 2020, the Bureau of Prisons (BOP) released a COVID-19 action plan. The action plan largely focuses on restricting access to federal prisons and limiting the movement of prisoners between prisons.

On March 18, 2020, the American Civil Liberties Union (ACLU) sent a letter to the Department of Justice (DOJ) and its BOP seeking the release of prisoners in the custody of BOP and the U.S. Marshals Service (USMS) who might be at risk for serious illness because of COVID-19, and a reduction in the intake of new prisoners to avoid overcrowding. In addition, multiple Members of Congress have also urged DOJ and BOP to take steps "to reduce the incarcerated population and guard against potential exposure to coronavirus," and legislation has been introduced that would require the release of some federal prisoners during a national emergency relating to a communicable disease.

BOP updated its action plan on March 19, 2020, to clarify that while prisoner movement is limited under the plan, BOP will still move prisoners as needed to properly manage the prison population and to outline new conditions that must be met if a prisoner is transferred.

On March 31, 2020, BOP announced that effective April 1, 2020, all prisoners will be placed on a 14-day lockdown in their assigned cells as a measure to prevent the spread of COVID-19. Prisoners will be allowed to leave their cells during this period for certain reasons, such as attending programming or to shower and use the phone.

On April 14, 2020, BOP announced that its action plan, which was initially set to expire on April 12, 2020, would be extended until May 18, 2020.

Regarding the release of federal criminal defendants in detention pending trial, 18 U.S.C. Section 3142 allows for federal courts to reopen pretrial detention hearings based on new information or permit temporary release of pretrial detainees for "compelling" reasons. With respect to the release of federal prisoners who are currently serving their court-imposed sentences, 18 U.S.C. Section 3582(c)(1)(A) permits a federal court to reduce a prisoner's sentence and impose a term of probation or supervised release if the court finds that "extraordinary and compelling reasons warrant such a reduction," or the prisoner is at least 70 years of age, the prisoner has served at least 30 years of his or her sentence, and BOP has determined that the prisoner is not a danger to the safety of any other person or the community. Under 34 U.S.C. Section 60541(g), BOP is authorized to conduct a program whereby elderly and terminally ill prisoners who meet certain statutory requirements can be placed on home confinement. Under 18 U.S.C. Section 3624(c), BOP is authorized to place prisoners in a Residential Reentry Center (i.e., a halfway house) and/or on home confinement at the end of their sentences. The Coronavirus Aid, Relief, and Economic Security Act (the CARES Act; P.L. 116-136) permits the BOP Director to extend the maximum amount of time for which a prisoner may be placed on home confinement under Section 3624(c)(2) under certain circumstances. Under Article II, Section 2 of the U.S. Constitution, the President has broad authority to grant clemency for federal offenses, which can include commuting a prisoner's sentence to time served.

The Attorney General has issued three memoranda outlining how DOJ will utilize the legal authorities available to it to respond to the COVID-19 pandemic. Two of the memoranda are to the BOP Director, and they direct BOP to increase the number of prisoners placed on home confinement and outline factors for BOP to consider when making decisions about which prisoners should be released from federal prison. The other memorandum is for all components of DOJ, including all United States Attorneys, and it provides a directive on how prosecutors should make decisions about the use of pretrial detention for federal defendants in light of possible exposure to COVID-19.

E-FILED
Thursday, 21 May, 2020 03:47:11 PM
Clerk, U.S. District Court, ILCD



*Congressional*
*Research Service*
Informing the legislative debate since 1914

# Federal Prisoners and COVID-19: Background and Authorities to Grant Release

Updated April 23, 2020

Congressional Research Service

https://crsreports.congress.gov

R46297

**CRS REPORT**
Prepared for Members and
Committees of Congress